**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| INTERFAITH HOUSING CENTER OF THE NORTHERN SUBURBS, | |
| Plaintiff, | Case No. 11-cv-01146 |
| v. | Judge Sharon Johnson Coleman |
| BARRY BERNSEN; BARBARA BERNSEN; and BERNSEN MANAGEMENT, INC., | Magistrate Judge Morton Denlow |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on motion by Defendants Barry Bernsen, Barbara

Bernsen, and Bernsen Management, Inc. (collectively, "Defendants") to dismiss the complaint

filed by Plaintiff Interfaith Housing Center of the Northern Suburbs ("Plaintiff"). The

Defendants argue, *inter alia*, that dismissal is proper pursuant to Federal Rules of Civil

Procedure 12(b)(1) and 12(b)(6). For the reasons that follow, the Court grants the motion to

dismiss Barbara Bernsen in her individual capacity. The Court denies Defendants' motion in all

other respects.

## BACKGROUND

The following facts are taken to be true for the purpose of this motion. Plaintiff, a not-

for-profit fair housing corporation, filed the this action on February 18, 2011 asserting three

claims against Defendants based upon violations of the Federal Fair Housing Act, 42 U.S.C. §

3601, *et seq.* (West 2011) ("Fair Housing Act" or "the Act") (Dkt. No. 1.) Plaintiff alleges that

on or about March, 2010, it received a complaint from a resident of an apartment building in

Evanston, Illinois owned and managed by Defendants. (*Id.* at ¶ 5.) The resident stated that

Defendants refused to rent apartments to individuals who were not students at Northwestern University. (*Id.*) Plaintiff conducted an investigation into Defendants' housing practices in order to determine whether Defendants discriminated against potential renters on the basis of student status or familial status. (*Id.* at ¶ 6.) Plaintiff alleges that Defendants violated the Fair Housing Act, 42 U.S.C. §3604, by discriminating on the basis of familial status and by expressing a preference based on familial status during the course of renting apartments. (*Id.* at ¶¶ 14, 16.)

Plaintiff caused three separate "testers" to make rental inquiries about apartments in Defendants' building. (*Id.* at ¶¶ 7-9.) Tester #1 represented that she was a Northwestern student interested in a three-bedroom apartment for herself and two roommates. (*Id.* at ¶ 7.) She was shown two available apartments by Defendant Barbara Bernsen on January 8, 2011. (*Id.*) Barbara Bernsen told Tester #1 that the building was usually "pretty quiet." (*Id.*) Tester #2 called Bernsen Management, Inc. on or about January 9th, 2011 and spoke with a person who identified himself as Defendant Barry Bernsen. (*Id.* at ¶ 8.) Barry Bernsen asked the tester whether she was a Northwestern student. (*Id.*) When the tester informed him that her husband was starting at Northwestern in the fall, Mr. Bernsen stated that the building was not suitable for families and that if she had a family she would be unhappy there. (*Id.*) Tester #3 contacted Defendants on January 11, 2011 and spoke with Barry Bernsen. (*Id.* at ¶ 9.) The tester represented that he was the spouse of the second tester, would be attending Northwestern in the fall, and was interested in renting a three-bedroom apartment in Evanston. (*Id.*) Mr. Bernsen inquired into the tester's familial situation and the tester stated that he had a five-year old daughter. (*Id.*) Mr. Bernsen then told Tester #3 that he didn't think he would be happy with the apartment, which was designed for students, not for families. (*Id.*)

Plaintiff claims that its investigation into Defendants' housing practices and subsequent legal efforts directed against this conduct have deflected considerable time and money away from Plaintiff's activities unrelated to fair housing discrimination. (*Id.* at ¶ 12.) Plaintiff also alleges that its clients and potential clients have been deprived of the opportunity to rent housing in Defendants' Evanston building as a result of their familial status. (*Id.*) Plaintiff claims that Defendants' actions were performed willfully, maliciously and/or with reckless disregard for the rights of Plaintiff. (*Id.* at ¶ 13.)

## LEGAL STANDARD

### A.     Motions to Dismiss Pursuant to Rule 12(b)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure requires dismissal of any claim over which the federal court lacks subject matter jurisdiction. FED. R. CIV. P. 12(b)(6). In reviewing a motion to dismiss pursuant to Rule 12(b)(1), a district court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the plaintiff. *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). Article III of the Constitution limits the federal courts to adjudicating actual "cases" or "controversies." U.S. CONST. art. III, § 2. This requires that a party must have standing for each cause of action asserted. *Parvati Corp. v. City of Oak Forest*, 630 F.3d 512, 516 (7th Cir. 2010). To establish Article III standing, a plaintiff must allege: (1) an injury in-fact; (2) fairly traceable to the defendant's actions; and (3) capable of being redressed by a favorable decision from the court. (*Id.*)

### B.      Motions to Dismiss Pursuant to Rule 12(b)(6)

In order to withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." *Smith v. Medical Benefit Administrators, Inc.* 639 F.3d 277, 281 (7th Cir. 2011); FED. R. CIV. P. 8(a*)*.  This statement "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  When considering a motion to dismiss, courts must accept the truth of all well-pleaded allegations and must construe the complaint in the light most favorable to the non-moving party.  *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007).  The plausibility standard requires plaintiffs to allege enough facts to "nudge[] their claims across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570.

### DISCUSSION

Defendants seek dismissal of the complaint, arguing that it fails to state sufficient facts for a claim under the Fair Housing Act. (Dkt. No. 14 p. 3.)  The Court disagrees.  The Fair Housing Act provides in pertinent part that it is unlawful:

> (b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of... familial status....

> (c) To make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on... familial status... or an intention to make any such preference, limitation, or discrimination.

42 U.S.C. § 3604. As discussed above, a complaint need only contain sufficient factual matter to make a claim that is facially plausible. *Twombly*, 550 U.S. at 570. A district court applies the "ordinary listener" standard when determining whether a statement "indicates" a preference in violation of the Fair Housing Act. *White v. Dep't of Housing & Urban Dev.*, 475 F.3d 898, 905 (7th Cir. 2007). This standard is neither suspicious nor insensitive. *See, e.g., Jancik v. Dep't of Housing & Urban Dev*., 44 F.3d 553, 556 n. 4. (7th Cir. 1995). The complaint contains statements allegedly made by Barry Bernsen to Plaintiff's testers which could lead an ordinary listener to believe either that Defendants have a discriminatory policy against renting to people with families, or that Defendants indicated a preference against renting to people with families. Barry Bernsen's alleged statements that "the building was not suitable for families" and that "it was designed for students, not for families," may lead an ordinary listener to believe that Defendants prefer not to rent apartments to people with families. (Dkt. No. 1 ¶¶ 9, 10.)

Defendants also argue that the complaint is too vague to withstand a motion to dismiss because the names of the testers are withheld. (Dkt. No. 14 pp. 3-4.) In support, Defendants rely upon *Diamond Cleaning Corp. v. Universal Fire and Casualty Co.* 1996 WL 734689 (N.D. Ill. 1996). In *Diamond*, the plaintiff filed an action alleging that the defendant breached its duty to defend or indemnify plaintiff under its insurance policy. 1996 WL 734689, at * 1. The district court granted the defendant's motion to dismiss the action because the complaint failed to allege any information regarding the causes of action upon which the defendant's duty to defend were allegedly premised. 1996 WL 734689, at * 3. Unlike the plaintiff in *Diamond*, Plaintiff here includes sufficient information regarding the testers' interactions with Barbara and Barry Bernsen to comply with federal pleading standards. Though the names of the testers are not included in the complaint, the complaint does contain detailed allegations of the nature of their

conversations with Defendants and when they occurred to meet the *Twombly* plausibility standard.

Defendants further argue that Plaintiff lacks standing to bring a discriminatory practices claim under the Fair Housing Act because it has not suffered an actual injury. (Dkt. No. 14 p. 4.) The Court disagrees. A fair housing organization has standing to sue under the Fair Housing Act if it alleges the minima of injury required by Article III of the Constitution. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372 (1982); *City of Chicago v. Matchmaker Real Estate Sales Center, Inc.*, 982 F.2d 1086, 1094-1095 (7th Cir. 1992). Plaintiff describes Defendants' allegedly discriminatory actions that caused Plaintiff to expend time and money performing an investigation into the discriminatory practice. (Dkt. No. 1 ¶¶ 11, 12.) Deflection of an organization's time and money away from activities such as counseling constitutes a sufficient injury to confer standing on that agency. *U.S. v. Balistreri*, 981 F.2d 916, 933 (7th Cir. 1992); *City of Chicago v. Matchmaker Real Estate, Inc.*, 982 F.2d 1086, 1095 (7th Cir. 1992). Plaintiff satisfied Article III standing by alleging that its deflection of resources away from activities unrelated to fair housing was causally linked to Defendants' discriminatory conduct, and by requesting a permanent injunction and monetary damages to redress the injury. (Dkt. No. 1 ¶¶ 11, 12, 16.)

Defendants rely upon the Tenth Circuit case of *Wilson v. Glenwood Intermountain Properties, Inc.*, 98 F.3d 590 (10th Cir. 1996), to argue that they did not engage in impermissible discrimination. (Dkt. No. 14. pp. 5-6.) Defendants' reliance is misplaced. In *Wilson*, the Tenth Circuit concluded that non-students lacked standing to bring a gender discrimination suit under the Fair Housing Act against landlords who only rented apartments to Brigham Young University students of a specific gender. (*Id.*) The Tenth Circuit reasoned that the non-students

lacked standing because "even in the absence of the challenged gender discrimination they would not have qualified to rent the student apartments." (*Id.* at 594) In contrast, Plaintiff here alleges that Barry Bernsen told Tester #3 that the apartment was "not for families" even after the tester stated that he was a student at Northwestern University. (Dkt. No. 1 ¶ 10.) These allegations are unlike the situation in *Wilson*, where the plaintiffs did not represent to the defendants that they were students before they were denied housing. *Wilson*, 98 F.3d 590. Plaintiff has standing and Barry Bernsen's alleged statements, considered under the "ordinary listener" standard, sufficiently state a claim for discriminatory conduct in violation of the Fair Housing Act.

Defendants also argue that Barry and Barbara Bernsen should be dismissed from the suit because the corporation, and not the individual owners, is the principal under the Fair Housing Act. (Dkt. No. 14 p. 6.) Courts follow traditional agency principles whereby a corporation may be subject to vicarious liability for torts committed by its agents. *Meyer v. Holley*, 537 U.S. 280, 286 (2003). The corporation owners, however, may only be held vicariously liable for the actions of their agents in the presence of special circumstances. (*Id.*) Plaintiff has not alleged any special circumstances in this case that would cause both Barbara and Barry Bernsen to be vicariously liable for torts performed by their employees or agents. Nonetheless, Barry Bernsen may be held liable in his individual capacity for the statements he made to Testers #2 and #3, if his statements were found to be discriminatory under the Fair Housing Act. *See Matchmaker Real Estate*, 982 F.2d at 1096 (finding sales agents who engaged in racial steering individually liable for compensatory damages). Plaintiff includes no facts in the complaint that allege individual liability on the part of Barbara Bernsen. The complaint alleges only that Barbara Bernsen showed an apartment to a tester who claimed to be a Northwestern student looking for

an apartment for herself and two roommates. (Dkt. No. 1 ¶ 7.) Therefore, the Court dismisses all claims against Barbara Bernsen in her individual capacity.

## **CONCLUSION**

For the foregoing reasons, the Court grants Defendants' motion to dismiss this action against Defendant Barbara Bernsen in her individual capacity, but denies Defendants' motion to dismiss Plaintiff's complaint in all other respects.

IT IS SO ORDERED.

Dated: July 13, 2011

_____
Honorable Sharon Johnson Coleman
United States District Court Judge